# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# NORTHWESTERN DIVISION

| | |
|---|---|
| Timothy E. Moeller, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER RE MOTION FOR** |
| vs. ) | **SUMMARY JUDGMENT** |
| ) | |
| Zurich American Insurance Company ) | |
| of Illinois, (NAIC 1535), ) | Case No. 4:14-cv-046 |
| ) | |
| Defendant. ) | |

Before the court is defendant's motion for summary judgment, filed on April 17, 2015. On May 13, 2014, both parties consented to proceed before a magistrate judge. For the reasons outlined below, the motion is granted.

## I.     BACKGROUND

Plaintiff, Timothy Moeller ("Moeller"), alleges that on December 8, 2012, he was operating a semi-tractor and pulling a tanker loaded with crude oil traveling eastbound on McKenzie County Road when an unidentified semi-tractor drifted into his lane causing him to move his semi-tractor as far as he could to the right side of the road to avoid a collision which ultimately caused his semi-tractor to roll on its side. Moeller reported the incident to his employer, Powerline Transport LLC, who notified law enforcement. McKenzie County Deputy Sheriff Michael Ficken ("Deputy Ficken") responded to the scene and took Moeller's statement.

The semi tractor and trailer being operated by Moeller was insured under an insurance policy issued by Zurich American Insurance Company of Illinois ("Zurich") with uninsured motorist coverage limits of $100,000,00. Moeller filed a claim under the uninsured motorist insurance

1

policy which was denied.

Moeller initiated this action on April 1, 2014 in the state court of McKenzie County. Zurich removed on April 29, 2014, invoking the court's diversity jurisdiction.[1] In his complaint he alleged "[t]hat as a result of the negligence and carelessness of the 'phantom driver' causing said semi-tractor and trailer to overturn, Plaintiff Moeller sustained severe and permanent injuries to his body[.]" Moeller seeks to recover in excess of $50,000.00 for uninsured motorist benefits; statutory interest on all accrued claims; and reasonable attorney fees.

On April 17, 2015, Zurich moved for summary judgment, arguing that Moeller has not presented corroborating, competent evidence other than his testimony of his version of the alleged accident on December 8, 2015, and as such, his uninsured motorist claim should be dismissed as a matter of law. Moeller opposed summary judgment, relying on the deposition of Deputy Ficken, the affidavit of Piccola Clark, and the notes made in the claim file by a Zurich claims representative in support of his position that there is competent, corroborating evidence which creates a material issue of fact.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.

---

[1] Moeller originally brought separate lawsuits in state court against Zurich American Insurance Company of Illinois and Zurich American Insurance Company. After removal, the cases were consolidated into a single case. (Docket No. 13). However, on May 19, 2015 the court entered an order adopting a stipulation of dismissal (Docket No. 34) and dismissed the claims against Zurich American Insurance Company with prejudice.

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

### III. DISCUSSION

Based on the parties' submissions, it appears that both parties agree that the Zurich insurance policy is a valid contract and that North Dakota contract law applies.

It is well-established in North Dakota that the interpretation of an insurance policy is a question of law. Close v. Ebertz, 1998 ND 167, ¶ 12, 583 N.W.2d 794. The standard for construing an insurance contract in North Dakota is as follows:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible.

> The whole contract is to be taken together to give effect to every party, and each clause is to help interpret the others.

K & L Homes, Inc. V. American Family Mut. Ins. Co., 2013 ND 57, ¶ 8, 829 N.W.2d 724 (quoting Zieglemann v. TMG Life Ins., 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted)). "Exclusions from coverage in an insurance contract must be clear and explicit and are strictly construed against the insurer." Tibert v. Nodak Mut. Ins., 2012 ND 81, ¶ 9, 816 N.W.2d 31 (quoting Myaer v. Nodak Mut. Ins., 2012 ND 21, ¶ 9, 812 N.W.2d 345). Although a policy's exclusionary clauses are strictly construed, under North Dakota law, this court will not rewrite a contract to impose liability on the insurer when the policy unambiguously precludes coverage. K & L Homes, Inc. at ¶ 8. Tibert, at ¶ 9; Schleuter v. Northern Plains Ins., 2009 ND 171, ¶ 8, 772 N.W.2d 879.

### A. The Zurich Insurance Policy

The Zurich insurance policy contained a "North Dakota Uninsured Motorists Coverage" endorsement. (Docket No. 23, Ex. 1). Section A of the endorsement, subsection 1, states:

> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

Id. As it relates to coverage when neither the driver nor owner can be identified, Section F(3)(c)(2) of the Zurich insurance policy defines an "uninsured motor vehicle" as follows:

> C. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
> (1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or
> (2) Cause "bodily injury" to an "insured" without hitting an "insured",

> a covered "auto" or a vehicle an "insured" is "occupying", provided the facts of the "accident" can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such "accident".

Id. It is undisputed that there was no collision or contact between Moeller's vehicle and the phantom vehicle.[2] Therefore, the question before this court is whether Moeller has produced competent, corroborating evidence, other than his own testimony, which supports his version of the December 8, 2012 accident, which would allow him to obtain uninsured motorist benefits.

### B. Evidence claimed by Moeller to be competent and corroborating

Moeller concedes that he cannot rely solely upon his own testimony to obtain coverage under the uninsured portion of the Zurich insurance policy. However, Moeller asserts that he is not relying upon his own testimony but rather the testimony of Deputy Ficken, Piccola Clark and documents created and/or maintained by insurance claim representatives to corroborate his version of the December 8, 2012 accident. Moeller further argues that a jury presented with this evidence could reasonably conclude that Moeller was forced off the road by another vehicle which would entitle him to uninsured motorist benefits; therefore creating a dispute of material issue of fact.

#### 1. Deposition testimony of Deputy Ficken

Moeller contends that the deposition testimony of Deputy Ficken is competent, corroborating evidence of Moeller's uninsured motor vehicle claim. In support of this contention, Moeller relies on the following excerpt from Deputy Ficken's deposition:

> Q. Okay. And so he did communicate to you that a vehicle had moved

---

[2] See (Docket 1, Ex. 1, p-2). Plaintiff states in the complaint that "[t]here was no contact made between the two semi tractors."

>over to at least a portion of his roadway that caused him to go into the ditch?
>
>**A.     That would be fair (nodding affirmatively).**

(Docket No. 29, Ex. 1, Transcript of Deputy Ficken p. 29)

>Q.      But if Mr. Moeller told you a vehicle moved over - or a truck didn't move over far enough and his truck was in the ditch, was the pos - the - the position of the truck and the tire marks that you saw consistent with what he told you?
>
>**A.     Yes.**

(Docket No. 29, Ex. 1, Transcript of Deputy Ficken p. 29).  Moeller asserts that Deputy Ficken essentially agreed that the scene of the accident was consistent with Plaintiff Moeller being forced off the road and his testimony is competent evidence that corroborates Moeller's version of the accident.

### 2.     Affidavit of Piccola Clark

Moeller also asserts that the affidavit of Piccola Clark and the copy of her AT&T phone records are competent, corroborating evidence which supports Moeller's version of the accident. Specifically, Moeller points out that Clark stated in her affidavit that Moeller called her twice immediately after the accident on December 8, 2012. (Docket No. 29, Ex. 2, ¶ 6). She also stated that Moeller told her that "he was forced to move over to avoid a collision with the oncoming truck, since the other truck was not moving over." (Docket No. 29, Ex. 2, ¶ 8).

### 3.     Claim representative's evidence

Moeller further contends that the records of communications of the claim representatives of the Zurich insurance policy are competent, corroborating evidence of Moeller's version of the accident.  In support of this argument, Moeller relies on three entries.  The first claim entry which

was filed sometime between December 10, 2012 and February 11, 2013, states:

> IV was slowing to stop at the highway. OV was taking over the road so IV got closer to the edge as to leave the OV space. The conditions were icy and the IV slipped off the road and...[3]

(Docket No. 29, Ex. 7). Moeller asserts that this entry corroborates Moeller's report that the phantom vehicle forced him off the road.

Moeller also filed a printout of a conversation occurring between two claim representatives regarding the accident. (Docket No. 29, Ex. 8). Moeller specifically points to Dana Koepp's statement entered on December 10, 2012:

> per report, another veh (assuming coming from opp direction) was all over the road, insd moved as close to the right as possible and slid off a bank, trailer overturned on to (assuming) right side.

Id. Moeller also submitted documentation of entries made by Dana Koepp on March 11, 2013 and March 29, 2013. The March 29, 2013 entry states "I do not see a UMBI exposure. It appears insured driver caused the accident." (Docket No. 29 Ex. 9). In regards to the accident, the March 23, 2015, entry reports "he was 'forced' off the road by another driver passing him. [H]e has read the police report it was wrong." Id.

Moeller argues that these entries were made as part of Koepp's investigation into the accident and that the entries are documentation that the accident occurred as the result of the driving conduct of the phantom vehicle.

---

[3] Docket No. 29, Ex. 7 appears to be a print out of a claim entry that was entered on the computer. Because it is a screenshot of a computer page, the court cannot read what the claim says after "and..."

### C. Zurich's argument against the claimed corroborating evidence

Zurich argues that Moeller's claim for uninsured motorist benefits fails as a matter of law because he has not provided competent, corroborating evidence to support his version of the December 8, 2012 accident, as required under the insurance policy. Zurich further argues that the evidence presented by Moeller should not be considered corroborating, competent evidence because it is all based on Moeller's own statements and under the policy it must be independent of his account.

Zurich contends that Moeller's reliance on the deposition testimony of Deputy Ficken is misguided as the portion of testimony Moeller cites was taken out of context. Zurich points out that Moeller did not cite the question and answer in between the two questions Moeller did cite, which reads:

> Q. And from your review of the accident scene, what you saw would have been consistent with that?
>
> **A. It would have been consistent with him moving over, yes. I – I still don't know if there was another truck there at the time.**

(Docket No. 23, Ex. 4, Transcript of Deputy Ficken p. 29). Zurich argues that Deputy Ficken's deposition testimony that Moeller relies on as corroborative evidence was not based on the physical evidence he found at the scene but based solely on the statements Moeller made to him. Therefore, Zurich insists that Deputy Ficken's deposition testimony cannot be considered competent, corroborating evidence.

In regard to the affidavit of Piccola Clark and any notes made in the claim file, Zurich argues that these are not competent, corroborating evidence because they are based on statements

made by Moeller himself and not from any first hand knowledge of the Piccola Clark or the claim representatives.

D.     **Court's analysis**

The court has reviewed the entire deposition of Deputy Ficken and does not find that his testimony corroborates Moeller's version of the accident. As previously noted, Deputy Ficken testified that Moeller communicated to him that a vehicle had moved over to some portion of his roadway which caused him to go into the ditch. Deputy Ficken also agreed that the position of the truck and the tire marks would have been consistent with what Moeller had told him. However, Deputy Ficken also testified that he did not know if another truck was there at the time of the accident. Furthermore, Deputy Ficken testified the following:

> Q.     Did you see any marks from the other truck that he referred to that was coming from the other way on the road –
> **A.     No, there wasn't**.
> MR. SCHAFER: Objection. Foundation.
> By MR. STORSLEE:
> Q.     Okay. Did you – did you look to see if there were any other tracks on the roadway, of either him slamming on the brakes or another vehicle approaching or anything like that?
> **A.     I did.**
> Q.     And did – what did you find?
> **A.     I didn't see anything other than his tracks.**
> Q.     Okay. And tell us kind of how those tracks appeared to you on the road.
> **A. It appeared that his tracks, as he was traveling eastbound, slowly – and it was fairly fresh snow so there wasn't a lot of other tracks on the road. His tracks, you know, gradually went over to the right along the ditch line and, as you can see in some of these photos, as he got to the ditch line –there is a fairly decent slope on this roadway. As he got to the ditch line, it appears that the trailer tires started to slide and just slid down into the ditch.**

9

(Docket No. 23, Ex. 4, Transcript of Deputy Ficken p. 15).

> **Q.    Did he appear to be upset when you got there about this other truck that the – about causing this accident?  Was he upset about this other truck at all or –**
>
> **A.    I remember him being upset, may per se not – not so – he wasn't upset at the other truck enough to the fact where I believed that I should go try to find this other truck and where I believed that this other truck caused the accident.**
>
> **I looked at this accident as basically an accident.  It was hard to see the roadway.  The roadway was fair – fairly narrow.  And, by the way, his truck was – it slid into the ditch.  I didn't view it as a hit-and-run or he was ran off the road.**

(Docket No. 23, Ex. 4, Transcript of Deputy Ficken pp. 21-22).

Deputy Ficken's testimony only confirms what Moeller told him about the direction of travel of his vehicle as it went off the road, which was consistent with any number of things including Moeller falling asleep or being otherwise inattentive, and does not corroborate the presence of another vehicle.  Also, despite the freshness of the snow, Deputy Ficken did not see any tracks from another truck that would be consistent with Moeller's statement, and he concluded "I didn't view it as a hit-and-run or he was run off the road." Id.

The court has also reviewed the affidavit of Clark, who has periodically resided with Moeller since 2004 and has two children with him.  In summary, she stated that Moeller called her twice on December 8, 2012 and told her he was forced to move over to avoid a collision with the oncoming truck, since the truck was not moving over.  Clark's statements in her affidavit do not corroborate the facts alleged by Moeller.  Her statements simply reiterate Moeller's own statements about what occurred.

Finally, the court has also reviewed the documentation submitted by the claim

10

representatives. These entries are not evidence that the accident occurred as the result of the driving conduct of the phantom vehicle as suggested by Moeller. They merely reflect what Moeller reported to either Deputy Ficken or to the claim representatives and what they noted in the file. There is no evidence that the claim representatives did their own investigation into the accident besides looking at the accident report and speaking with Moeller.

Moeller would like the court to accept that his statements to various people (Deputy Ficken, Piccola Clark, and the claims representatives) after the accident as competent, corroborating evidence of the facts of the accident. However, the court agrees with Zurich that this is insufficient and that the plain meaning of the policy language requires that the competent, corroborating evidence derive from a source independent of Moeller's account of the facts.

Other courts construing similar policy or statutory language appear to have come to the same conclusion. See, e.g., Burmeister v. State Farm Insurance Company, 966 P.2d 921 Ct. App. Wash. 1998) ("[c]orroborating evidence must tend to verify the claimant's version of the facts, it is something which leads an impartial and reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstance independent of a statement of a witness." (internal citations omitted)); Ellison v. Nationwide Mutual Insurance Company, 600 S.E.2d 229 (Ct. App. W. Va. 2004) (holding driver's statement that second vehicle was proximate cause of accident, without more, was insufficient evidence to support passenger's claim for uninsured motorist coverage; no one else saw the accident and the investigating officer found no independent evidence that suggested second vehicle was present); Powell v. Viking Insurance Company, 722 P.2d 1343, 1348 (Wash. App. 1986) ("[c]orroborating evidence, as used in the statute, means evidence that tends to strengthen or confirm the testimony of the insured and/or other claimants...[w]ithout

11

independent corroborating evidence, there can be no coverage."). Moeller cites only one case in support of his position, Mason v. State Farm Mut. Auto. Ins. Co., 2010 WL 2870667, U.S. Dist. Ct., E.D. Mo., July 19, 2010). That case, however, is distinguishable because there was corroborating evidence in that case independent of the account of the insured.

In short, after viewing the evidence presently before the court in the light most favorable to Moeller and drawing all reasonable inferences in Moeller's favor, the court finds that there is no evidence, besides Moeller's own testimony, demonstrating that Moeller's vehicle tipped on its side in response to negligent action taken by a phantom vehicle. In view of Moeller's failure to offer sufficient competent, corroborating evidence of the accident the court concludes that Zurich properly denied coverage under the uninsured motorist policy.

## IV.    CONCLUSION

For the reasons set forth above the court finds that Zurich is entitled to judgment as a matter of law. Therefore, Zurich Insurance 's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**. Moeller's complaint shall be **DISMISSED WITH PREJUDICE**.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

Dated this 2nd day of October, 2015.

>  */s/  Charles S. Miller, Jr.*
>  Charles S. Miller, Jr.
>  United States Magistrate Judge